## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                    No. CR 07-0348  JB

FREDERICK ABEITA,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS  MATTER**  comes  before  the  Court  on  the  Defendant  Abeita's  Sentencing Memorandum, filed August 27, 2007 (Doc. 26).  The Court held a sentencing hearing on September 5, 2007. See Clerk's Minutes, filed Sept. 5, 2007 (Doc. 28).  The primary issue is whether the Court should,  under  United States v. Booker, 543 U.S. 220 (2005),  vary  from  the  advisory  guideline sentence of 33-41 months and sentence Defendant Frederick Abeita to probation or to time served and supervised release. Consistent with the Court's ruling at the hearing on this motion, and for the reasons given at the time of the hearing, the Court will deny Frederick Abeita's request to vary from the advisory guideline sentence and will sentence him to a sentence at the low end of the guideline range to a term 33 months imprisonment.

## FACTUAL BACKGROUND

It appears that Frederick Abeita and Joe Alex Abeita share a history of substance abuse problems that have resulted in trouble with the law.  See Pre-Sentence Investigation Report ("PSR") (disclosed April 17, 2007) ¶¶ 30, 61, at 7, 15.  Frederick Abeita admitted that he has substance abuse issues that began when he was eighteen years of age.  See PSR ¶ 61, at 15. In the past, Frederick

Abeita had attended outpatient treatment once a week for a period of three months.  See id. ¶ 62, at 15.

The offense took place on October 7, 2005.  See PSR ¶ 8, at 3.  The crime involved a shooting.  See PSR ¶ 10, at 3. The victim was Joe Alex Abeita.  See PSR ¶ 8, at 3.  Frederick Abeita and Joe Alex Abeita were involved in an altercation, which led Frederick Abeita to fire four rounds from a shotgun.  See id. Frederick Abeita then fired a shot in the home of a neighbor.  Id.

Joe Alex Abeita initially spoke with Special Agents working with the Bureau of Indian Affairs.  See PSR ¶¶ 8-10, at 3.  On October 26, 2005, the agents interviewed Joe Alex Abeita.  See PSR ¶ 10, at 3. Joe Alex Abeita stated that the fight with Frederick Abeita began when Frederick accused him of instigating a fight that occurred the previous day.  Id. The verbal altercation became physical when Frederick began punching Joe Alex Abeita and then swinging at him with a stick. Id. Joe Alex Abeita stated he grabbed a broom and swung back at Frederick.  Joe Alex Abeita stated he started to leave when Frederick retrieved a shotgun and started shooting at him.  Id. Joe Alex Abeita was hit on the left hand and forearm with pellets from the shot.  Id.

## PROCEDURAL BACKGROUND

Neither the United States Probation Office nor the United States Attorney's Office was able to make contact with Joe Alex Abeita.  See PSR ¶ 16, at 4.   The investigating agent for this case, however, subsequently spoke to Joe Alex Abeita when he was incarcerated on another charge.  See id. Frederick Abeita asserts, upon information and belief, that Joe Alex Abeita is now in the hospital suffering from cirrhosis of the liver. Defendant's Sentencing Memorandum ¶ D, at 4, filed Aug. 27, 2007 (Doc. 26) ("Defendant's Memo.").

As the PSR's cover sheet shows, Frederick Abeita was in custody for three days on the federal charge.  See PSR at 1. As a result of Abeita serving some time in incarceration, the Court

could impose up to three years of supervised release.  See PSR ¶ 76, at 19.  Albeita is also eligible

for probation.  See PSR ¶ 78, at 19.  The Court could impose up to five years of probation.  See PSR

¶ 79, at 19.

Abeita submits his memorandum in support of a reduction in his sentence from a total

offense level of 19 with a criminal history category of II, for a guideline imprisonment range of 33

to 44 months, to total offense level of 5, with a criminal history category of II, for a guidance

imprisonment range of 0 to 6 months.  See Defendant's Memo. at 1.  Abeita requests that the Court

impose a period of probation or supervised release instead of a period of incarceration.  See id.  In

support of his request for a reduction in his sentence, Frederick Abeita submits: (i) a letter from the

office manager for Joe Padilla Utility Construction, Inc. (dated July 23, 2007); and (ii) a letter from

Frederick Abeita's foreman for Joe Padilla Utility Construction, Inc.(dated July 23, 2007).  See

Defendant's Memo., Exhibit Letters.

Frederick Abeita contends that he has used his federal arrest in this case as a turning point.

See Defendant's Memo ¶ F, at 4.  As corroborated by the two letters, Frederick Abeita is

maintaining steady employment with Joe Padilla Utility Construction, Inc., as opposed to the

periodic employment during the last seven years.  See PSR ¶ 64, at 16.  He has maintained his job

for the last eight months.  During the pendency of this  federal case, Frederick Abeita has attended

counseling for over eight months and stated that "he enjoys his sessions and believes they are

helping him."  Id. ¶ 62, at 15.

Frederick Abeita argues that, if the Court were to impose the 33 months that the PSR

recommends, he will lose his job.  See Defendant's Memo. ¶ D, at 5. As a result, his mother would

lose the income upon which she depends.  See PSR ¶ 54, at 14.  Frederick Abeita argues that a

sentence of house arrest would not be feasible, because his employment keeps him away from his

house and, consequently, a land line, four out of five days per week.  See Defendant's Memo. ¶ E, at 5.  Frederick Abeita also maintains that a sentence in a halfway house is not feasible, because he is assigned to Velarde and/or Dulce, New Mexico at the present time.  See Defendant's Memo. ¶ F, at 6.  Frederick Abeita represents that he could not live at a halfway house and still commute to Velarde or Dulce everyday.  See Defendant's Memo. ¶ F, at 6.

## LAW REGARDING GUIDELINE SENTENCES

In United States v. Booker, the Supreme Court of the United States severed the mandatory provisions from the Federal Sentencing Act, thus making the Guidelines effectively advisory.  In excising the two sections, the Supreme Court left the remainder of the Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.  Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."  543 U.S. at 261.  Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

18 U.S.C. § 3553(a)(2)(A)-(D).  See 18 U.S.C. § 3551 ("[A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the

-4-

case.").  To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to considerable deference.  See Rita v. United States, 127 S. Ct. 2456, 2464 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses."  United States v. Cage, 451 F.3d at 593 (internal quotations omitted).  A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a).  See United States v. Booker, 543 U.S. at 261-62.

## ANALYSIS

The Court finds the factors set forth in § 3553(a) do not support the granting of a variance. Frederick Abeita has many adult convictions, some of which involve violence; this offense is too serious to warrant probation, or time served and supervised release.  The Court, therefore, denies Frederick Abeita's request to vary from the sentence that the Guidelines recommend.

A.      THE NATURE AND CIRCUMSTANCES OF THE OFFENSE, AND THE
        HISTORY AND CHARACTERISTICS OF ABEITA.

Concerning the first two factors – the nature and circumstances of the offense, and the history and characteristics of the defendant – these do not counsel for a non-guideline sentence. Frederick Abeita has seventeen adult convictions: (i) assault and battery; (ii) shoplifting; (iii) possession of marijuana; (iv) assault and battery; (v) leaving the scene of an accident, stop sign violation, and driving while license suspended; (vi) defective equipment; (vii) speeding; (viii) false imprisonment (felony); (ix) driving while under the influence of intoxicating liquor or drug; (x) driving while intoxicated; (xi) battery against a household member and failure to pay fines imposed; (xii) speeding, driving on suspended/revoked license; (xiii) disorderly conduct; (xiv) disorderly conduct; (xv) assault and battery; (xvi) driving under the influence of drugs or intoxicating liquor, and driving on suspended/revoked license; and (xvii) disorderly conduct and emotional abuse of a child. See PSR ¶¶ 28-44, at 6-12. There are six other arrests. See PSR ¶¶ 46-52, at 12-13. Many of the convictions involved violence. For example, the first assault and battery involved Frederick Abeita pushing a woman, with whom he has had a relationship and children – Christine Abeita – against the wall, and verbally threatening her when she tried to leave the residence. See PSR ¶¶ 28, 56, at 6, 14. Officers took a photograph of Ms. Abeita, indicating a large bump on the left side of her forehead. See PSR ¶ 28, at 6.

Frederick Abeita emphasizes his post-arrest rehabilitation. See Defendant's Memo ¶ F, at 4. While that rehabilitation has been impressive, it does not offset Frederick Abeita's criminal past. The Court believes that these factors are at best neutral and do not counsel for a variance.

**B.      THE SENTENCE IMPOSED MUST REFLECT THE SERIOUSNESS OF THE OFFENSE.**

Probation and time served would not reflect the seriousness of the offense.  A firearm was discharged.  See PSR ¶¶ 8-12, at 3-4.  Frederick Abeita assaulted the victim with a shotgun, which he fired approximately four times.  See PSR ¶ 8, at 3.  The seriousness of the offense caused bodily injury to the victim.  See PSR ¶ 10, at 3.  Probation or time served would not adequately reflect the seriousness of the offense.  More incarceration is necessary.

**C.      THE SENTENCE IMPOSED MUST PROMOTE A RESPECT FOR THE LAW.**

Many of Frederick Abeita's convictions are in tribal court, and the tribal court did not use incarceration as a punishment most of the time.  For example, on the first assault and battery, Frederick Abeita pled guilty, and the tribal court sentenced him to thirty days custody suspended for thirty days if Frederick paid a $67.50 fine within thirty days. See PSR ¶ 28, at 6. The Court does not believe that Frederick Abeita has learned respect for the law from the many fines, suspended sentences, and probations that he has received.  See PSR ¶¶ 28-52, at 6-13.  The Court concludes that incarceration is necessary to promote respect for the law, both by Frederick Abeita and by the public at large.

**D.      THE SENTENCE IMPOSED MUST PROVIDE JUST PUNISHMENT FOR THE OFFENSE.**

The Court does not believe that probation or time served would be a just punishment for the offense.  Frederick Abeita committed a serious offense, discharging a shotgun multiple times.  See PSR ¶¶ 8-12, at 3-4.  Incarceration should be part of a just sentence for the offense in this case.

**E.      THE SENTENCE IMPOSED MUST PROVIDE ADEQUATE DETERRENCE TO CRIMINAL CONDUCT.**

Probation, suspended sentences, and fines have not provided adequate deterrence to

Frederick Abeita's criminal conduct.  See PSR ¶¶ 28-52, at 6-13.  It is unlikely that probation or time served would provide adequate deterrence to further criminal conduct by Frederick Abeita.  A sentence without incarceration is also unlikely to provide adequate general deterrence to criminal conduct.

**F.     THE SENTENCE IMPOSED SHOULD PROTECT THE PUBLIC FROM FURTHER CRIMES BY THE DEFENDANT.**

Incarceration is the surest means of protecting the public from further crimes by Frederick Abeita.  Probation and suspended sentences have not protected the public so far.  See PSR ¶¶ 28-52, at 6-13. The Court believes that incarceration is needed to assure that he not commit further crimes for a period of time.

**G.     THE COURT HAS CONSIDERED THE KINDS OF SENTENCES AVAILABLE AND THE SENTENCING RANGE ESTABLISHED.**

Concerning the third and fourth factors – the kinds of sentences available and the kinds of sentence and the sentencing range established – the Court has carefully considered the sentencing options that Frederick Abeita proposes.  The Court does not believe that those options adequately reflect the factors in 18 U.S.C. § 3553(a).  On the other hand, the advisory guideline sentence reflects them well.

**H.     THE SENTENCE SHOULD TAKE INTO ACCOUNT THE IMPORTANT PUBLIC POLICIES THAT THE GUIDELINES EMBODY.**

The Guidelines embody years of experience sentencing defendants in federal courts.  And because of the interaction with the political branch, the Guidelines also express Congress' approval of the penalties in those guidelines.  The Court has, in arriving at a reasonable sentence, carefully considered the advisory guideline sentence, and believes a guideline sentence is most appropriate given the facts and circumstances of this case.

I. **INCARCERATION WILL ALSO PROVIDE ABEITA WITH AN OPPORTUNITY TO PARTICIPATE IN THE BUREAU OF PRISONS' 500 HOUR DRUG AND ALCOHOL TREATMENT PROGRAM.**

While a term of probation and supervised release could require Frederick Abeita to participate in certain counseling programs, incarceration may allow Frederick Abeita to participate in the Bureau of Prisons' 500 hour drug and alcohol treatment program. See Transcript of Hearing at 12:21-25, 13:1 (Court)(taken Sept. 5, 2005) ("Tr.").[1] The Court is convinced that much of Frederick Abeita's criminal activity is the result of substance abuse. The Court believes that incarceration of at least 18 months is necessary for Frederick Abeita to secure the full benefits of the program. See Tr. at 12:21-25, 13:1 (Court).

The Court finds the defendant has a total of seventeen criminal convictions within the last nineteen years. See PSR ¶¶ 28-45, at 6-12. He has demonstrated an unwillingness to abide with the laws of the United States and those implemented under tribal authority. See id. Four of the seventeen convictions were for similar conduct, specifically assault and battery, beginning in 1987 and continuing through 2001. See PSR ¶¶ 28, 31, 35, 38, 42, at 6-9, 11. He represents a danger to the community, and has exhibited a willingness to engage in behavior resulting in serious bodily injury or risk of death. See PSR ¶¶ 28-45, at 6-12.

The Court has considered Frederick Abeita's argument that a sentence of house arrest would not be feasible because he would lose his job, and that his mother is depending upon income that he was receiving from his work. See Tr. at 16:21-25, 17:1-9 (Court). The other factors, however, so strongly counsel in favor of incarceration that they override these considerations. While incarceration is disruptive to both Frederick Abeita's work and to his family, official custody often

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

has this result, and Frederick Abeita's situation is not so different from the others whom the Court must incarcerate that a variance is warranted in his case.

In sum, the Court is convinced that probation and time served is not the appropriate sentence, and would not be sufficient to promote the goals of the Sentencing Reform Act.  Indeed, to vary from the guideline sentence would introduce an unwarranted disparity in sentencing similarly situated defendants.  In contrast, the Court believes that the advisory guideline sentence is a reasonable sentence.  The Court concludes that a guideline sentence better promotes the sentencing goals that Congress has established than the alternatives that Abeita proposes.  Incarceration is appropriate in light of Abeita's criminal history and because he would benefit from an opportunity to participate in the Bureau of Prisons' 500 hour drug and alcohol treatment program.

**IT IS ORDERED** that the Defendant's request that the Court impose a sentence of time served and supervised release, or of probation, is denied.  The Court will impose a sentence at the low end of the advisory guideline range, at a term of 33 months.  The following special conditions will also be imposed: Abeita must participate in and successfully complete a substance abuse treatment program which may include drug testing outpatient counseling or residential placement. Abeita may be required to pay a portion of the cost of treatment and/or drug testing as required by the probation office.  The Court recommends that Abeita participate in the Bureau of Prisons' 500 hour drug and alcohol treatment program.  Abeita must participate in and successfully complete a mental health treatment program which may include outpatient counseling residential placement or prescribed medication as approved by the probation officer.  Abeita  may be required to pay a portion of the cost of this treatment as determined by the probation office.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Presiliano Torrez
   Assistant United States Attorney
Albuquerque, New Mexico

       *Attorney for the Plaintiff*

Jacquelyn Robins
Albuquerque, New Mexico

       *Attorney for the Defendant*